UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DEBRA KINGSTON,<br><br>    Plaintiff,<br><br>    v.<br><br>ANGIODYNAMICS, INC. &<br>NAVILYST MEDICAL, INC.,<br><br>    Defendants. | Case No. 21-cv-10234-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                     July 16, 2021

**I.  Introduction**

Plaintiff Debra Kingston ("Kingston") has filed this lawsuit against Defendants AngioDynamics, Inc. ("AngioDynamics") and Navilyst Medical, Inc. ("Navilyst") (collectively, "Defendants") alleging that she suffered injuries from a defective implantable medical device manufactured by Defendants. D. 1-3. Defendants have moved to dismiss Kingston's claims for lack of personal jurisdiction. D. 7. Kingston has also moved to remand to state court. D. 16. For the reasons stated below, the Court DENIES the motion to remand, id., and ALLOWS Defendants' motion to dismiss, D. 7.

**II.  Standard of Review**

  **A.  Motion to Remand**

Upon the filing of a motion to remand, the Court must assess whether it "would have had original jurisdiction of the case had it been filed in [this] court" initially. BIW Deceived v. Local

S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 832 (1st Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)) (internal quotation marks omitted). When a plaintiff files an action in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). The defendant "must . . . make a 'colorable' showing that a basis for federal jurisdiction exists." Id. (quoting BIW Deceived, 132 F.3d at 832). "Generally, '[d]oubts about the propriety of removing an action should be resolved in favor of remand.'" Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 26 (D. Mass. 2005) (quoting Giannetti v. Mahoney, 218 F. Supp. 2d 8, 10 (D. Mass. 2002)).

### B. Motion to Dismiss

In ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a district court must apply the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, a plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution," to meet their burden pursuant to Fed. R. Civ. P. 12(b)(2). Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster–N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). In doing so, the Court will "not credit

conclusory allegations or draw farfetched inferences," Ticketmaster–N.Y., 26 F.3d at 203, and must keep in mind that the plaintiff needs to "do more than simply surmise the existence of a favorable factual scenario; [they] must verify the facts alleged through materials of evidentiary quality." Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)). "Thus, allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." Id. (quoting Barrett, 239 F.3d at 27). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

### III. Factual Background

These facts are taken from the operative complaint. D. 1-3. For the purposes of the motions, the Court presumes the factual allegations put forth by Kingston are true and also considers the Defendants' uncontradicted factual allegations.

In or about 2010, Defendants received clearance via the Food and Drug Administration's ("FDA") 510(k) Premarket Notification Program to market and sell the SmartPort CT, id. ¶ 15, a port/catheter system designed, manufactured, marketed, sold and distributed by Defendants, id. ¶ 17. The SmartPort CT is an implantable vascular access device, designed to provide repeated access to the vascular system for the delivery of medication, intravenous fluids, blood products and parenteral nutrition solutions. Id. ¶ 18. It consists of two primary components—an injection port and as silicone catheter. Id. ¶ 20. The Fluromax Catheter is a high-radiopacity catheter, comprised of a polymeric mixture of silicone and barium sulfate. Id. ¶¶ 23-24. Barium sulfate is known to contribute to the reduction of the mechanical integrity of silicone *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time. Id. ¶ 25. Kingston alleges

3

that Defendants' manufacturing process in constructing the Fluromax Catheter involved too high a concentration of barium sulfate particles, leading to the improperly high viscosity of the raw silicone before polymerization and causing improper mixing of barium sulfate particles within the silicone matrix. Id. ¶ 28. Although surface degradation and resultant mechanical failure can be reduced or avoided with design modifications, Defendants elected not to incorporate such design elements into the SmartPort CT. Id. ¶ 30. Years before Kingston was implanted with the device, Defendants received adverse event reports ("AERs") from health care providers reporting that the SmartPort CT was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Id. ¶ 38.

On September 13, 2016, Kingston underwent placement of an implantable vascular access device in Paducah, Kentucky. Id. ¶ 46. Defendants manufactured, sold and/or distributed the SmartPort CT to Kingston's doctors, who used the SmartPort CT to deliver Kingston's chemotherapy. Id. ¶ 47. In October 2017, at Baptist Health Medical Center, Kingston underwent surgery to remove the SmartPort CT and catheter. Id. ¶ 48. During the procedure, her surgeons observed that the catheter to the SmartPort CT had fractured, sending catheter fragments into her superior vena cava, right atrium and ventricle. Id. Kingston has experienced significant mental and physical pain and suffering, has sustained permanent injury and permanent and substantial physical deformity, has undergone and will undergo corrective surgeries and has suffered financial or economic loss as a result. Id. ¶ 56.

## IV. Procedural History

Kingston instituted this action in Middlesex Superior Court on October 26, 2020. D. 1. On December 31, 2020, Kingston filed the first amended complaint. D. 1-3. Defendants removed to this Court on February 11, 2021, D. 1, and subsequently moved to dismiss, D. 7. Kingston then

moved to remand to state court. D. 16. The Court heard the parties on the pending motions and took these matters under advisement. D. 29.

V.     **Discussion**

   A.     **Motion to Remand**

Defendants removed this case, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, claiming diversity jurisdiction, which requires complete diversity between the parties and an amount in controversy greater than $75,000. D. 1 at 1. For purposes of the diversity statute, corporations are deemed to be "citizens" of the state in which they are incorporated and have a principal place of business. 28 U.S.C. § 1332(c)(1). There are "'three distinct, but not necessarily inconsistent tests' for determining a corporation's principal place of business." Chin v. Holiday Cruises II, Inc., 141 F.R.D. 367, 369 (D. Mass. 1992) (quoting Roman Ramos v. H.B. Fuller Co. Puerto Rico, 729 F. Supp. 221, 222 (D.P.R.1990)). "The 'nerve center' test 'searches for the location from where the activities of the corporation are controlled and directed.'" Id. This test is principally used when dealing with companies "whose activities are 'complex and farflung.'" Id.

The "center of corporate activity" test looks to "where the corporation's day-to-day management takes place," id. (citing Ortiz Mercado v. Puerto Rico Marine Management, Inc., 736 F. Supp. 1207, 1211 (D.P.R. 1990)), and "the 'locus of operations' test focuses on 'where the bulk of the corporation's actual physical operations are located,'" id. Pursuant to the "forum defendant rule," removal based on diversity jurisdiction is not permissible if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); see Rizzi v. 178 Lowell St. Operating Co., LLC, 180 F. Supp. 3d 66, 67 (D. Mass. 2016).

5

Applying any of these tests leads to the conclusion that the Defendants' principal place of business is not in Massachusetts. Both AngioDynamics and Navilyst are incorporated in Delaware. D. 1-3 ¶¶ 3-4. According to the affidavit of AngioDynamics' Chief Financial Officer ("CFO"), Navilyst's operations in the United States are carried out by AngioDynamics and the individuals who carry out work on behalf of Navilyst in the United States are employed directly by AngioDynamics. D. 23-1 ("Trowbridge Aff.") at ¶¶ 6, 9. AngioDynamics' global headquarters is in New York. Id. ¶¶ 3, 8, 11. AngioDynamics' chief executives, financial and accounting departments, legal department, human resources and other executive and control functions take place in its New York office, id. ¶ 8, and all significant corporate decisions for both AngioDynamics and Navilyst are made by, subject to review by and approved by executives in the New York Office, id. ¶ 11. Accordingly, under all tests, Defendants' principal place of business is New York, as it is the headquarters' location, where legal and accounting functions occur and where the chief executive maintains office. O'Grady v. Safety-Kleen Sys., Inc., No. 1:19-cv-11814-ADB, 2020 WL 1514604, at *11 (D. Mass. Mar. 30, 2020); see Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 41–42 (1st Cir. 2016) (noting that a corporation's principal place of business is located where owners, though possibly "hands off in day-to-day decisions," "exercise[d] 'ultimate' control over" the corporation by setting "policy and goals"). Moreover, in Kingston's amended complaint, D. 1-3, she herself alleges that AngioDynamics is a "corporation organized and existing under the laws of Delaware, with its headquarters and principal place of business located at 14 Plaza Drive, Latham, New York, 12110," noting that AngioDynamics also "do[es] business within the Commonwealth of Massachusetts and elsewhere in the United States," id. ¶ 3. Kingston argues that Navilyst's principal place of business is in Marlborough,

Massachusetts, but does not dispute that that AngioDynamics "completed a purchase of Navilyst in 2012," id. ¶ 4, and is now wholly owned by AngioDynamics, D. 23-1 ¶¶ 5-6.

In support of her motion to remand, Kingston introduces evidence of AngioDynamics employees who work in Massachusetts. See D. 18-4 at 2-6. These references, however, are not to high-level officers who "exercise[ ] ultimate control over the corporation by setting policy and goals." O'Grady, 2020 WL 1514604, at *11 (internal quotation marks omitted) (quoting Harrison, 811 F.3d at 41–42). Rather, the LinkedIn printouts Kingston offers refer to employees such as the "VP of Strategic Marketing," "SVP Chief of Human Resources Officer," "VP of Global Procurement," a "Principal Clinical Data Manager," a "Research and Development Manager," and "SVP of Scientific and Clinical Affairs," among others. D. 18-4 at 2-6. Having some employees in Massachusetts is inadequate to make Defendants' principal place of business Massachusetts, particularly where the employees are not the "corporation's officers [who] direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) (explaining that the "principal place of business" "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination").

Kingston also argues that according to Navilyst's New York State Division of Corporations entity information, Defendants' principal place of business is Massachusetts. D. 16 at 3; see D. 18-3. It is undisputed that Navilyst has a location in Marlborough, Massachusetts, D. 13-1 at 2, and lists its Marlborough location as a principal executive office for the New York State Department of State Division of Corporations, id. Navilyst, however, is now a wholly owned subsidiary of AngioDynamics. D. 13 at 11 (noting Navilyst's registration as a foreign corporation in Massachusetts was revoked in 2014). Kingston presents no evidence to dispute that all

7

significant corporate decisions for both AngioDynamics and Navilyst are made by executives based in AngioDynamics' headquarters in New York. D. 23-1 ¶ 11. Accordingly, Navilyst's Massachusetts location fails to meet the criteria for a principal place of business, as it is not where AngioDynamics' corporate decisions are made. Id. See Hertz Corp., 559 U.S. at 92–93. Kingston also points to a prior litigation in which AngioDynamics was a party in 2014 and argues this case is further evidence that Defendants' principal place of business is in Massachusetts. D. 18-8. Kingston points specifically to the case's civil cover sheet, which lists as Defendants' "county of residence" its Marlborough, Massachusetts address. Id. Still, notably the complaint that case also asserted that "AngioDynamics is a Delaware corporation having its principal place of business at 14 Plaza Drive, Latham, New York 12110." AngioDynamics, Inc. v. Norfolk Medical Products, Inc., No. 1:14-cv-12246-IT, ECF No. 1 (D. Mass. May 21, 2014) (noting that AngioDynamics also "maintains corporate offices" in Marlborough, Massachusetts).

Kingston points as well to FDA premarket information that directs correspondence to Defendants' Massachusetts location. D. 18-6, D. 18-7. While this again indicates that some business is done in Massachusetts, this does not indicate Massachusetts is Defendants' principal place of business. Lastly, Kingston asserts that AngioDynamics' CEO owns a house in Massachusetts. D. 18-10; D. 18-11. Although these documents support Kingston's allegation that the CEO owns or owned property in 2018, id., it does not establish that he works out of Defendants' Massachusetts location, particularly where the CFO's affidavit asserts that he is based in the New York headquarters, D. 23-1 ¶ 8. Although Kingston asserts broadly that Defendants' core operations are in Massachusetts, given the record and with Kingston herself asserting in the amended complaint that AngioDynamics' principal place of business and headquarters are in New York, D. 1-3 ¶ 3, the Court concludes that Defendants' principal place of business is not in

Massachusetts. See Ticketmaster–N.Y., 26 F.3d at 203. Accordingly, the motion to remand, D. 16, is denied.

### B. Motion to Dismiss

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks omitted). Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017); see, e.g., Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., No. 17-cv-12301-NMG, 2020 WL 1452579, at *6 n.9 (D. Mass. Feb. 10, 2020), report and recommendation adopted, No. 17-cv-12301-NMG, 2020 WL 1446845 (D. Mass. Mar. 24, 2020).

### 1. *Personal Jurisdiction*

#### a) Massachusetts Long-Arm Statute

Kingston argues that the Court has jurisdiction over Defendants pursuant to section 3(a) of the Massachusetts long-arm statute, which provides for the exercise of personal jurisdiction over an individual in a cause of action "arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. L. c. 223A, § 3(a); see D. 13 at 8. "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in

9

Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)). The "transacting business" clause "is construed broadly, and courts look to whether the defendant attempted to participate in the Commonwealth's economic life." QLS Logistic Servs., LLC v. JAWS Assocs., LLC, No. 17-cv-11891-ADB, 2018 WL 5816342, at *3 (D. Mass. Nov. 6, 2018) (quoting Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 238 (D. Mass. 2018)). "The 'transacting business' test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party . . . with a view to determining whether 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable." Roy v. FedEx Ground Package Sys., Inc., No. 17-cv-30116-KAR, 2018 WL 2324092, at *5 (D. Mass. May 22, 2018) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 112-13). Pursuant to the long-arm statute's "arising from" requirement, "a claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Tatro, 416 Mass. at 771. "The inquiry ultimately boils down to a 'but for' causation test which asks '[d]id the defendant's contacts with the Commonwealth constitute "the first step in a train of events that result[ed] in the personal injury."'" Access Now, Inc. v. Otter Prod., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

Here, Kingston argues that a significant portion of the actions required to get the SmartPort CT to market took place in Marlborough, Massachusetts, including its research, development and design. D. 13 at 8; D. 1-3 ¶ 6. AngioDynamics has several officers who work at its Massachusetts location, including its Vice President of Global Supply Chain, Vice President of Strategic Marketing and Senior Vice President Chief of Human Resources Officer. D. 13-7.

AngioDynamics' FDA 510(k) Premarket Notification lists AngioDynamics' Marlborough location for correspondence purposes. D. 13-10. On these bases, Defendants "transact business" in Massachusetts within the meaning of section (a). Mass. Gen. L. c. 223A, § 3; see Access Now, Inc., 280 F. Supp. 3d at 291 (concluding company's nominal sales in Massachusetts, field market representative in Massachusetts and registration to do business in the state satisfied the "transacting business" prong); Edwards v. Radventures, Inc., 164 F. Supp. 2d 190, 194 (D. Mass. 2001) (finding that sales within the state to state citizens, a website through which Massachusetts sales were solicited and a Massachusetts sales location was sufficient to satisfy the "transacting business" prong).

Turning to the long-arm statute's "arising under" requirement, Kingston argues that her injuries are tied to Defendants' business activities in Massachusetts, because "[b]ut for Defendants' actions and omissions occurring within the Commonwealth, the SmartPort CT never would have made it to the medical facility" where it caused Kingston's injury. D. 13 at 9. Defendants counters that her claim is inadequate for jurisdiction purposes, as a plaintiff "cannot rely solely on conclusory averments but must adduce evidence of specific facts," D. 23 at 13 (quoting Chen v. United States Sports Acad., Inc., 956 F.3d 45, 57 (1st Cir. 2020) (noting that "[u]nder the prima facie approach, an inquiring court must ask whether the plaintiff has 'proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction'"). Even noting that Kingston has adduced some evidence to support the assertion that Defendants have a Massachusetts location at which some AngioDynamics' employees are employed and conduct business, see D. 13-7 at 2-6, she fails, however, to support the assertion that "but for" Defendants' activities in Massachusetts, her injury would not have occurred. Defendants' corporate decisions were made at its global headquarters in New York and

Defendants' products—including the device at issue in this litigation—were manufactured in New York, which is also AngioDynamics' sole United States manufacturing location. D. 23-1 ¶¶ 12-17. The fact that Defendants have a Massachusetts location is insufficient for the Court to infer that Kingston's injury would not have occurred but for Defendants' Massachusetts activities, particularly where AngioDynamics Massachusetts location is one of four United States locations and Kingston provides no evidence to support the contention that Defendants' activities specific to Massachusetts caused the harm.

Kingston contends that even if the device was not manufactured in Massachusetts, the research and development and regulatory issues that resulted in the SmartPort CT occurred in Massachusetts and establish an adequate nexus between Kingston's injury and Defendants' Massachusetts contacts. D. 13 at 13. She furthers that "[w]ithout research and development and regulatory compliance, there [would] be no product." Id. Kingston fails, however, to provide any evidence to support the assertion that the Marlborough location is where such acts or decisions occur, id., and therefore, cannot meet the requirements of Massachusetts' long-arm statute.

    2.    *General Jurisdiction*

Even if Kingston had satisfied her showing under the long-arm statute, she also fails to satisfy the due process analysis. "For jurisdiction to be proper, constitutional requirements of due process must be met." Shipley Co. v. Clark, 728 F. Supp. 818, 822 (D. Mass 1990). There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).

General jurisdiction applies when the defendant's contacts with the forum state have been "so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S.

at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Centurion Networking Serv. Partners, LLC v. Barker, No. 17-cv-11304-ADB, 2018 WL 1972789, at *2 (D. Mass. Apr. 26, 2018) (internal quotation marks omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). "The paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 57 (1st Cir. 2020). In "exceptional case[s]," however, "a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. (quoting Daimler AG, 571 U.S. at 134).

As discussed above, neither AngioDynamics nor Navilyst can be characterized as "at home" in Massachusetts. Moreover, conducting some business in the Commonwealth is inadequate for general jurisdiction purposes. See Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 369 (D. Mass. 2017) (holding that Court lacked general jurisdiction where company "maintain[ed] two locations in Massachusetts, employ[ed] people in Massachusetts, and serve[d] some proportion of its patients in Massachusetts," but was "incorporated under Rhode Island Law and ha[d] its principal place of business in Rhode Island"). Accordingly, general jurisdiction does not apply here.

### 3. *Specific Jurisdiction*

Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, 600 F.3d at 31 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "In contrast to general, all-purpose jurisdiction,

specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A., 564 U.S. at 919 (internal quotation marks omitted). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8-9 (1st Cir. 2009) (citing N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

a) Relatedness

The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09-cv-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro–Med, 591 F.3d at 9). This is a "flexible, relaxed standard," id., but still requires a causal relationship between Kingston's claim and Defendants' forum-related conduct, Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (internal quotation marks omitted) (quoting Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)). "[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." Id. at 61 (alteration in original) (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)).

Here, Kingston alleges that AngioDynamics has its research and development headquarters in Massachusetts, as well as its regulatory affairs and post-market surveillance operations. D. 1-3 ¶ 6. As noted above, however, the record does not support Kingston's assertion that the research and development or regulatory affairs for the SmartPort CT were performed in Massachusetts.

14

Moreover, Kingston is not domiciled in Massachusetts, id. ¶ 2, nor did her injury or the sale of the SmartPort CT occur in Massachusetts, id. ¶¶ 46-48. Rather, Kingston's place of domicile and the location in which the product was used is Kentucky. Id. ¶¶ 2, 46-48. The product was manufactured in New York, D. 23-1 ¶¶ 12-15, which is Defendants' sole manufacturing location, id. ¶ 16. The existence of a facility in Massachusetts, alone, is inadequate to establish a proximate cause nexus between Defendants' in-state conduct and Kingston's injury.

Kingston cites to Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., __ U.S. __, 141 S. Ct. 1017, 1026 (2021) to support her argument that Defendants' contacts in Massachusetts are sufficient to meet the relatedness test. D. 27. There, the Supreme Court notes that its precedent has never suggested that "only a strict causal relationship between the defendant's in-state activity and the litigation will do," id. at 1026, but rather, that the "most common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum,'" id. (emphasis omitted). The Supreme Court specifically references cases in which "a company like Ford serves a market for a product in the forum State and the product malfunctions there." Id. at 1027. Unlike here, the plaintiffs there were residents of the forum states, used the allegedly defective products in the forum states and suffered injuries when those products malfunctioned in the forum states. Id. at 1031.

Kingston is a resident of Kentucky, the allegedly defective SmartPort CT was used in Kentucky and the injury was suffered in Kentucky. D. 1-3 ¶¶ 2, 46-48; see Ford Motor Co., 141 S. Ct. at 1031 (noting that the Supreme Court has found jurisdiction improper where "the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims," including when plaintiff was not a resident of the forum state, had not used the product in the forum state and had not sustained injuries in the forum state). Kingston's sole alleged connection

15

between her claims and the Commonwealth, aside from the assertion that Defendants are citizens of the Commonwealth, is that the product would not exist "but for" the existence of the Massachusetts facility, which is not supported by the record. D. 13 at 8-9.

Moreover, even if the Court were to accept Kingston's theory that the SmartPort CT's research and development or regulatory affairs occurred in Massachusetts, "[t]here must be more than just an attenuated connection between the contacts and the claim," for the relatedness prong to be satisfied. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008). "[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." Harlow, 432 F.3d at 61 (quoting Marino, 793 F.2d at 430). Here, even the alleged contact with Massachusetts is not "an important or material element of proof," id., as the contact—to which Kingston was not a party—was merely the consequence of Defendants' having a Massachusetts location, and does not otherwise demonstrably relate to Kingston's injury in Kentucky. Without more, Kingston fails to show, beyond conclusory assertions, that the SmartPort CT would not exist "but for" Defendants' in-forum activities or that Defendants' in-state conduct gave rise to or otherwise relates to Kingston's injury.

Accordingly, as this Court concludes that Kingston fails on the relatedness prong, it need not reach the question of whether Kingston satisfies the other specific jurisdiction requirements. Grice v. VIM Holdings Grp., LLC, 280 F. Supp. 3d 258, 270 (D. Mass. 2017) (recognizing that "[a] plaintiff must prevail on all three prongs to establish specific jurisdiction" (citing Mukarker v. City of Philadelphia, 178 F. Supp. 3d 8, 10 (D. Mass. 2016)).

C. **Jurisdictional Discovery**

Kingston argues that "[s]hould this Court find [her] proffered facts insufficient to support prima facie finding of jurisdiction at this stage, jurisdictional discovery is warranted." D. 13 at 10.

16

The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" Swiss Am. Bank, 274 F.3d at 625 (emphasis omitted) (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)). "However, that entitlement is not absolute . . . [E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Id. at 625–26 (internal citations and quotation marks omitted). "[I]t is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" Rain ex rel. Crandall v. Conn. Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)). "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." Swiss Am. Bank, 274 F.3d at 626–27.

Here, Kingston alleges that Defendants' Massachusetts location hosted Defendants' research and development department, regulatory affairs and postmarked surveillance operations. D. 1-3 ¶ 6; D. 13 at 10. Even if these operations occurred in Massachusetts, however, this would not present a facially reasonable basis for jurisdiction. To satisfy jurisdiction requirements, Kingston needs to show that Defendants' Massachusetts contacts were, at least, "the first step in a train of events that result[ed] in the personal injury." Access Now, Inc., 280 F. Supp. 3d at 291 (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114); Pajak v. Rohm & Haas Co., 387 F. Supp. 3d 138, 144 (D. Mass. 2019), report and recommendation adopted, No. 19-cv-10277-NMG, 2019 WL 6715181 (D. Mass. Dec. 9, 2019) (denying request for

jurisdictional discovery where plaintiff "allege[d] no facts to support that [Defendants] meaningfully and purposefully directed the allegedly defective container into Massachusetts (for example by designing the containers for or selling, advertising or marketing them to customers in Massachusetts)"). Kingston's argument that certain operations occurred in Defendants' Massachusetts location, and that these operations led to the ultimate—and allegedly flawed—design of the SmartPort CT, which led to its eventual manufacture in New York, which led to its distribution to and subsequent harm in Kentucky, is too tenuous to state a colorable claim. Harrell v. Repp, 759 F. Supp. 2d 128, 132 (D. Mass. 2010) (noting that even if Plaintiff's claims were taken as true, the conduct alleged "would not establish the requisite minimum contacts"). Accordingly, Kingston fails to "present facts to the court which show why jurisdiction would be found if discovery were permitted," Swiss Am. Bank, 274 F.3d at 626, and, accordingly, the Court denies the request for jurisdictional discovery.

## VI. Conclusion

For the foregoing reasons, the Court DENIES the motion to remand, D. 16, and ALLOWS Defendants' motion to dismiss, D. 7.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge